O

1
2
3
4
5
6
7

# United States District Court
# Central District of California

8
9
10

11   LISA SILVEIRA, on behalf of herself and          Case No. 2:19-cv-06958-ODW(KSx)
     all others similarly situated,
12                                                    **AMENDED ORDER DENYING**
                          Plaintiff,                  **PRELIMINARY APPROVAL [21]**
13
14            v.
15   M&T BANK,
16                        Defendant.
17

18                          **I.    INTRODUCTION**

19            Plaintiff Lisa Silveira initiated this putative class action against Defendant
20   M&T Bank ("M&T"), on behalf of a class of homeowners, alleging that M&T
21   charged borrowers convenience fees when they made mortgage payments online and
22   over the phone ("Pay-to-Pay Fees"). (*See* Compl. ¶ 1, ECF No. 1.) The parties have
23   reached a settlement on behalf of the class. Silveira now moves, without opposition,
24   for preliminary approval of the parties' agreement ("Proposed Settlement Agreement"
25   or "Proposed Settlement"). (Mot. for Prelim. Approval ("Motion" or "Mot."), ECF
26   No. 21.) The Court has reviewed Silveira's Motion and finds that Silveira fails to
27   provide the Court with adequate information by which to determine the fairness,

28

1   adequacy, and reasonableness of the settlement.  As a result, the Court **DENIES**

2   Silveira's Motion without prejudice.

3                              **II.    BACKGROUND**

4         In December 2008, Silveira purchased a home in San Luis Obispo County,

5   California, through a loan that was secured by a mortgage on the property.  (Compl.

6   ¶ 23.)  In 2016, M&T acquired the loan and became the loan servicer.  (*Id.*)  Silveira

7   alleges she frequently pays her mortgage over the phone, and that M&T has charged

8   her a $15 fee each time ("Pay-to-Pay Fee").  (*Id.* ¶¶ 26–27.)  Silveira contends the

9   Pay-to-Pay Fees are a direct breach of her mortgage agreement and a violation of

10   federal and state laws.  (*Id.* ¶ 29.)

11        On August 9, 2019, Silveira filed this lawsuit on behalf of homeowner

12   borrowers throughout the United States, including California, whose mortgage loans

13   are serviced by M&T.  (*Id.* ¶ 36.)  Silveira alleges that M&T's conduct breached the

14   class members' mortgage agreements and violated the federal Fair Debt Collection

15   Practices Act ("FDCPA"), California's Rosenthal Fair Debt Collection Practices Act

16   ("Rosenthal Act"), and California's Unfair Competition Law ("UCL").  (*Id.* ¶¶ 48–81.)

17        On February 12, 2020, the parties reached a settlement; now Silveira seeks the

18   Court's preliminary approval of the Proposed Settlement Agreement.  (Mot. 2.)

19                              **III.    DISCUSSION**

20        The Court is troubled by several aspects of the parties' Proposed Settlement

21   Agreement, specifically: (1) the adequacy of the settlement fund; (2) the anticipated

22   attorneys' fees request; (3) the anticipated incentive award request; and (4) the

23   proposed notice to class members.  The Court addresses each in turn.

24   **A.    Settlement Fund**

25        Federal courts have interpreted Federal Rule of Civil Procedure 23(e) "to

26   require the district court to determine whether a proposed settlement is fundamentally

27   fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458

28   (9th Cir. 2000).  Prior to class certification, courts are obligated to apply a higher

1 standard of fairness to protect against inherent pre-certification dangers.  *Id.*;

2 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The dangers of

3 collusion between class counsel and the defendant, as well as the need for additional

4 protections when the settlement is not negotiated by a courtdesignated class

5 representative, weigh in favor of a more probing inquiry than may normally be

6 required under Rule 23(e)."), *overruled on other grounds by Wal-Mart Stores, Inc. v.*

7 *Dukes*, 564 U.S. 338 (2011).

8 The proposed settlement fund does not appear fair, adequate, and reasonable to

9 compensate the class members.  Silveira contends that the total settlement fund

10 represents approximately 35% of damages, which according to her counsel, "is an

11 excellent result."   (*See* Decl. of Hassan A. Zavareei ("Zavareei Decl.") Ex. 1

12 ("Settlement Agreement" or "SA") 16, ECF No. 21-1; Zavareei Decl. ¶ 12.)    The

13 Court is not convinced; Silveira fails to show how the $3,325,000 settlement fund will

14 adequately compensate class members for their harm.  While the parties estimate that

15 the proposed class contains "approximately 112,000" potential class members (SA

16 ¶ 1.27), they fail, for instance, to identify the harm to these members (e.g.,

17 approximately how much each class member paid in fees).  Without some concept of

18 the extent of the alleged harm to class members, the Court cannot determine the

19 fairness of the Proposed Settlement.

20 The Court notes, however, that according to Silveira, borrowers were charged

21 $15 each time they paid their mortgages over the phone or online.  (Compl. ¶¶ 26–27.)

22 And the proposed class period is defined as August 9, 2015, to the date that the Court

23 grants a motion for preliminary approval.  (SA ¶ 1.7.)  Based on the Court's rough

24 calculations, a class member who routinely pays their mortgage online or over the

25 phone could have been charged $180 a year, and that same borrower could have been

26 charged at least $720 from August 9, 2015, up to the date the Complaint was filed.  If

27 each class member paid roughly half that amount, the total damages would exceed $40

28 million.   Again, this is merely a rough estimation of the magnitude of the total

1   damages and the Court concedes these calculations are likely incorrect, but the point is

2   that the Court would not know one way or the other because the Motion lacks the

3   requisite information.

4   Therefore, the Court requires additional information from the parties to better

5   understand how the proposed *pro rata* distribution in this case adequately

6   compensates the class members.  In any renewed request for preliminary approval,

7   Silveira should attempt to estimate a general range—or series of ranges—of damages

8   sustained by each class member during the class period, and how much class members

9   will receive in different scenarios based on the proposed *pro rata* distribution.  For

10  example, how much will a class member receive if they routinely paid their mortgage

11  online or over the phone throughout the class period?  What if a class member only

12  paid their mortgage online or over the phone for a year, or three months?

13  At bottom, Silveira fails to provide the Court with basic information required to

14  determine whether the Proposed Settlement is fair, adequate, and reasonable.

15  Consequently, the Court cannot grant preliminary approval at this time.

16  **B.     Attorneys' Fees**

17  The Proposed Settlement Agreement authorizes Silveira's counsel to petition

18  the Court for approval of attorneys' fees and costs in an amount not to exceed one-

19  third of the Settlement Fund (i.e., $1,108,333).  (SA § 8.1.)  Silveira's counsel plans to

20  file a separate motion seeking approval of attorneys' fees.  (Mot. 17.)

21  While attorneys' fees and costs may be awarded in a certified class action

22  where so authorized by law or the parties' agreement . . . courts have an independent

23  obligation to ensure that the award, like the settlement itself, is reasonable, even if the

24  parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab.*

25  *Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).   Twenty-five percent recovery is the

26  benchmark for attorneys' fees, although courts in the Ninth Circuit have found upward

27  departures to fall within the acceptable range.  *See id.* at 942 (noting 25% benchmark);

28  *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (discussing that upward

1    departure is acceptable when expressly explained).  The Ninth Circuit has identified a

2    number of factors that may be relevant in determining if the award is reasonable:

3    (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality

4    of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel;

5    and (6) the awards made in similar cases.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

6    1048–50 (9th Cir. 2002).

7         At present, the Court is aware of no reason to award attorneys' fees that exceed

8    the Ninth Circuit's 25% benchmark, as Silveira's counsel has not demonstrated that

9    any special circumstances exist warranting an upward departure.  For instance, they

10   have not asserted this case was complex, or that the risks were significant or unique in

11   relation to other class actions.  The case was filed in August of 2019, and the docket

12   does not show any motion practice or discovery disputes—this case went straight to

13   settlement.  Thus, the attorneys' fee allocation, as proposed, is unreasonable.

14   **C.     Incentive Award**

15        Silveira seeks approval of a $10,000 incentive award for serving as Class

16   Representative.  (Mot. 8; SA § 8.2.)  "[D]istrict courts [should] scrutinize carefully

17   [incentive] awards so that they do not undermine the adequacy of the class

18   representatives."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir.

19   2013).  In evaluating incentive awards, the court should look to "the number of named

20   plaintiffs receiving incentive payments, the proportion of the payments relative to the

21   settlement amount, and the size of each payment."  *In re Online DVD-Rental Antitrust*

22   *Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing, Co.*, 327 F.3d 938,

23   977 (9th Cir. 2003)).  "Generally, in the Ninth Circuit, a $5,000 incentive award is

24   presumed reasonable."  *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx),

25   2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg.*

26   *Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

27        A $10,000 incentive award is double the presumptively reasonable amount, and

28   it would be substantially disproportionate to class members' anticipated recovery.  As

1  mentioned, this case settled at an early stage, and Silveira has not demonstrated how

2  her role warrants an incentive award so far from the $5,000 benchmark.  Thus, the

3  allocation of a $10,000 incentive award, as proposed, is unreasonable.

4  **D.    Notice**

5      Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice

6  that is practicable under the circumstances, including individual notice to all members

7  who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).

8  Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after

9  notice is directed in a reasonable manner to all class members who would be bound by

10  the agreement.  Fed. R. Civ. P. 23(e)(1).

11      The purpose of sending notice to class members is to ensure that the notice is

12  read and considered by the recipient.  Here, the parties propose that notice is sent via

13  first class mail; however, the Court is not convinced that the proposed notice is

14  indistinguishable from junk mail that will be discarded by the potential class

15  members.  For instance, the proposed notice (SA Ex. 1 ("Notice"), ECF No. 21-1)

16  does not prominently display M&T's name or logo on the first page, indeed the name

17  "M&T" is buried in the text.  As such, the Court recommends that the parties seriously

18  reconsider the design of the proposed notice and, at a minimum, prominently display

19  the M&T logo on the first page of the notice.

20      To further increase the likelihood that class members receive notice, the parties

21  should also consider providing notice electronically by e-mail, as it is likely M&T

22  already possesses that information, or such information may be easily accessible. *See,*

23  *e.g.*, *Byrne v. Santa Barbara Hosp. Servs., Inc.*, No. EDCV 17-00527 JGB (KKx),

24  2018 WL 10483678, at \*9 (C.D. Cal. Dec. 14, 2018) (citing cases and finding that the

25  combination of notice by mail and email may be the best notice practicable under the

26  circumstances).

27  ///

28  ///

#### IV.    CONCLUSION

In light of the Court's concerns, the Court cannot grant preliminary approval at this time.  Silveira's Motion (ECF No. 21) is therefore **DENIED** without prejudice. Silveira may renew her request no later than December 9, 2020.  If the Court does not receive an amended motion for preliminary approval by December 9, it will reset the trial and pretrial dates in this matter and proceed with the litigation.

**IT IS SO ORDERED.**

October 29, 2020

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE